**ROBINS KAPLAN LLP**

Christina M. Lincoln (SBN 274352)
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 552-0130
Facsimile: (310) 229-5800
Email:    clincoln@robinskaplan.com

-and-

Melissa M. D'Alelio
Taylore E. Karpa Schollard
800 Boylston Street, Suite 2500
Boston, Massachusetts 02199
Telephone:    (617) 267-2300
Facsimile:    (617) 267-8288
Email:    mdalelio@robinskaplan.com
          tkarpa@robinskaplan.com

**PARKER, HUDSON, RAINER & DOBBS LLP**

Harris B. Winsberg (admitted pro hac vice)
Matthew M. Weiss (admitted pro hac vice)
Matthew G. Roberts (admitted pro hac vice)
303 Peachtree St. NE, Suite 3600
Atlanta, Georgia 30308
Telephone: (404) 523-5300
Facsimile: (404) 522-8409
Email: hwinsberg@phrd.com; mweiss@phrd.com; mroberts@phrd.com

-and-

Todd C. Jacobs (admitted pro hac vice)
John E. Bucheit (admitted pro hac vice)
2 N. Riverside Plaza, Suite 1850
Chicago, Illinois 60606
Telephone: (312) 477-3305
Email: tjacobs@phrd.com; jbucheit@phrd.com
*Attorneys for Appalachian Insurance Company*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| *In Re:*<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>Debtor and Debtor in Possession<br>_____<br>APPALACHIAN INSURANCE COMPANY,<br>Plaintiff<br><br>v.<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, a corporation sole, and DOES 1 through 50;<br><br>Defendants. | Case No. 23-30564<br><br>Chapter 11<br><br>Hon. Dennis Montali<br><br>**APPALACHIAN INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT AND EQUITABLE REIMBURSEMENT AND DEMAND FOR JURY TRIAL**<br><br>ADVERSARY Case No._____ |

Plaintiff Appalachian Insurance Company ("Plaintiff" or "Appalachian") brings this Complaint for Declaratory Relief in its favor and against Defendant, The Roman Catholic Archbishop of San Francisco ("RCASF" or the "Archdiocese"), and in support of the Complaint alleges as follows[1]:

_____

[1] Appalachian alleges on personal knowledge as to allegations about itself. As to allegations about any other parties, Appalachian alleges on information and belief.

1

Case No.

APPALACHIAN INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT AND EQUITABLE REIMBURSEMENT AND DEMAND FOR JURY TRIAL

Case: 26-03029    Doc# 1    Filed: 06/26/26    Entered: 06/26/26 13:46:09    Page 1 of 31

## NATURE OF THE ACTION

1. The Archdiocese filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code on August 21, 2023 (the "Petition Date"). This Bankruptcy Case is pending before the Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"). [Main Case, ECF No. 1.]

2. The United States Trustee for Region 17 appointed the Committee on September 1, 2023, pursuant to 11 U.S.C. § 1102. [Main Case, ECF No. 58.]

3. In October 2019, California enacted AB 218 (the "CVA"), amending Cal. Civ. Proc. Code § 340.1 and creating a three-year "lookback window" (2020–2022) for previously time-barred childhood sexual assault claims.

4. During the CVA's "lookback window," approximately 541 Claimants (the "Claimants") filed civil actions against the RCASF (the "Underlying Claims"). Along with other Northern California clergy cases naming other defendants, those cases have all, or virtually all, been coordinated into a proceeding captioned *In re Northern California Clergy Cases*, Judicial Council Coordination Proceeding ("JCCP") No. 5108 in the Superior Court of California, County of Alameda.

5. The Underlying Claims allege that the RCASF knowingly permitted, concealed, and reassigned clergy accused of sexual abuse over decades, consistent with findings and allegations made nationwide and worldwide concerning similar conduct within Catholic institutions.

6. Specifically, the Claimants allege that for decades the Archdiocese permitted, denied, and concealed the sexual abuse by priests and others employed by the RCASF. The Underlying Claims also allege that the claimants sustained childhood sexual abuse committed by priests and/or others who were employed by or affiliated with the RCASF.

7. The Claimants also allege in the Underlying Claims that the Archdiocese shuffled abusers from parish to parish and archdiocese to archdiocese to keep the abuse (both generally and specifically) secret.

8. The pattern of abuse alleged in the Underlying Claims is consistent with a nationwide pattern that has emerged in the Catholic Church as a whole and its Archdioceses and parishes

Case: 26-03029    Doc# 1    Filed: 06/26/26    Entered: 06/26/26 13:46:09    Page 2 of 31

throughout the United States as well as around the world. Grand juries, convened across this country, have published reports detailing the culture of abuse permeating the Catholic Church.

9. The RCASF, together with affiliated parishes and schools under its control (sometimes referred to herein as the "Affiliates"), have tendered more than 125 of the Underlying Claims to Appalachian (the "Appalachian Claims"), seeking coverage from Appalachian under one or more of the following commercial excess liability policies issued by Appalachian to the RCASF: (1) policy number 71968 (effective for the period of July 8, 1975 to July 8, 1976), (2) policy number 72387 (effective for the period of July 8, 1976 to July 8, 1977) and (3) policy number 72547 (effective for the policy period of July 8, 1977 to July 8, 1978) (collectively, the "Excess Policies").

10. The Appalachian Claims include the two claims which were recently settled and subject to the Court's Order Granting Debtor's Motion to Approve Compromise and Settlement Agreement with John SF-1 Doe and John Doe SF-1013 (the "Settlement Order"). [Main Case, ECF No. 1672.]

11. Appalachian contends the Excess Policies do not afford coverage to RCASF for the Appalachian Claims. The specific bases for this contention include, but are not limited to:

   a. That the Appalachian Claims arising from allegations of abuse by Father Joseph Pritchard (the "Appalachian Pritchard Claims") are not covered in light of a 2005 jury verdict, which found that "the Archbishop of San Francisco, by December 31, 1973, kn[e]w or ha[d] reason to know, or was . . . otherwise on notice, that Father Joseph Pritchard had committed unlawful sexual conduct";

   b. That settlements in 2005 between and including the RCASF and Appalachian stemming from an earlier litigation (*Clergy III*, JCCP 4359) bar coverage under the Excess Policies for certain claims brought by one or more of the Claimants;

   c. That one or more of the Appalachian Claims, including but not limited to the Appalachian Pritchard Claims, were not caused by an "occurrence" as defined in the Excess Policies;

   d. That one or more of the Appalachian Claims, including but not limited to the

Case: 26-03029    Doc# 1    Filed: 06/26/26    Entered: 06/26/26 13:46:09    Page 3 of 31

Appalachian Pritchard Claims, allege personal injury and/or personal injury liability not covered by the Excess Policies;

e. That one or more of the Appalachian Claims, including but not limited to the Appalachian Pritchard Claims, allege personal injury occurring outside the applicable policy periods for the Excess Policies;

f. That the limits of liability of the policies underlying the Excess Policies have not been exhausted; and

g. That for one or more of the Appalachian Claims, the RCASF has not complied with the terms and conditions of the Excess Policies.

12. There now exists an actual, justiciable controversy between Appalachian and the Archdiocese concerning coverage under the Excess Policies. Appalachian seeks a declaration that it has no obligation to afford coverage under the Excess Policies for the Appalachian Claims, or any other similar sexual abuse or abuse claims against the RCASF or any of the Affiliates that claim insured status under the Excess Policies for the reasons stated herein.

13. In addition to the disputes described above, certain claims arising from alleged abuse by Father Joseph Pritchard, including the JOHN SF-1 DOE action (Case No. CGC-20-584162) and the JOHN DOE SF 1013 action (Case No. CGC-20-583648) (together, the "Doe Actions"), have been resolved through settlement approved by the Bankruptcy Court in the Settlement Order. Appalachian contributed to the settlement of the Doe Actions subject to an express reservation of rights, including its rights to seek reimbursement of amounts paid for claims that are not covered under the Excess Policies. Additionally, the settlement agreement approved by the Settlement Order expressly states that Appalachian and the other contributing insurers "reserve and do not waive or release their rights to: (1) seek reimbursement from the Archdiocese in connection with any Settlement Payments or Settlement Amounts paid pursuant to this Agreement in any insurance coverage action …." [Main Case, ECF No. 1672, at p. 12 of 22; *see also id.* at pp. 7 and 8 of 22.] The settlement agreement also provides that the Archdiocese disputes Appalachian's right to seek reimbursement from the Archdiocese. [Main Case, ECF No. 1672, at p. 12 of 22; *see also id.* at pp. 7 and 8 of 22.]

Case: 26-03029    Doc#2   Filed 06/26/26   Entered 06/26/26 13:46:09   Page 4 of 31

14. Appalachian contends that the Doe Actions are not covered under the Excess Policies.

15. Accordingly, the Archdiocese has been unjustly enriched at Appalachian's expense.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

17. The Debtor's Chapter 11 Case No. 23-30564 is currently pending in the United States Bankruptcy Court for the Northern District of California.

18. This adversary proceeding is a non-core proceeding. Plaintiff does not consent to entry of a final order or judgment by the Bankruptcy Court in this matter.

19. Venue is proper in this district under 28 U.S.C. § 1409(a) because the bankruptcy case is pending in this district.

20. The declaratory relief requested herein is proper under 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act) because there now exists an actual, justiciable controversy between Appalachian and the Archdiocese. Additionally, this Court has original jurisdiction under 28 U.S.C. § 1332 in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

## THE PARTIES

21. Appalachian Insurance Company (formerly known as Appalachian Insurance Company of Providence (both collectively referred to herein for all relevant purposes as "Appalachian")) is a corporation organized under the laws of the State of Rhode Island, with its principal place of business in the State of Rhode Island.

22. Defendant The Roman Catholic Archbishop of San Francisco ("RCASF" or the "Archdiocese") is a corporation sole established by the Vatican in or about 1853, with its principal place of business in San Francisco, California. The RCASF is made up of three counties: San Francisco County, Marin County, and San Mateo County. The Archdiocese of San Francisco controls and operates approximately 88 parishes, 120 schools, and one (1) seminary. The RCASF included The Roman Catholic Bishop of Oakland until its separation in or about January 13, 1962, The Roman Catholic Bishop of Santa Rosa until its separation in or about January 13, 1962, and The

Case: 26-03029    Doc# 1    Filed: 06/26/26    Entered: 06/26/26 13:46:09    Page 5 of 31

Roman Catholic Bishop of San Jose until its separation in or about 1981.

23. Appalachian is not in possession of the true names and capacities of each of the defendants designated in this complaint as Does 1 through 50. Appalachian is informed and believes and, on that basis, alleges that each of the defendants sued as Does 1 through 50 is in some manner interested in the controversy alleged in this complaint. Upon learning the true name and capacity of each or any of the Doe defendants, Appalachian will amend this complaint accordingly.

24. Upon information and belief, at all times relevant hereto each of the defendants, including without limitation Does 1 through 50, was the agent, affiliate, officer, director, manager, principal, alter-ego or employee of the other defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship, or employment and actively participated in, or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged herein, with full knowledge of all the facts and circumstances.

## FACTUAL ALLEGATIONS

A. *Appalachian's Excess Policies*

25. Appalachian issued the three Excess Policies to RCASF as follows:

a. Policy number 71968 effective for the period July 8, 1975 to July 8, 1976;

b. Policy number 72387 effective for the period July 8, 1976 to July 8, 1977; and

c. Policy number 72547 effective for the period July 8, 1977 to July 8, 1978.

26. The Excess Policies provide coverage only pursuant to their terms, definitions, conditions, exclusions, and endorsements contained within each policy.

27. The Excess Policies afford coverage excess of scheduled underlying insurance.

28. Under the terms, conditions, and provisions of the Excess Policies, the Excess Policies may not be triggered unless and until all applicable underlying or other available insurance is exhausted.

29. Specifically, the Excess Policies provide, in part, as follows:

II. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS:

6 Case No.

Case: 26-03029    Doc# 1    Filed 06/26/26    Entered 06/26/26 13:46:09    Page 6 of 31

With respect to any occurrence not covered by the underlying Policies listed in Schedule A hereof or any other underlying insurance collectible by the insured, but covered by the terms and conditions of this Policy except for the amount of Retained Limit specified in the declarations, the company shall:

(a) defend any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

\* \* \*

(c) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;

(d) reimburse the insured for all reasonable expenses, other than loss of income, incurred at the company's request;

and the amounts so incurred, except settlements of claims and suits are payable by the company in addition to the applicable limit of liability of this Policy.

\* \* \*

With respect to any claim which is covered by this policy and for which no insurance is warranted in Schedule A or provided by an underlying policy the company shall assume defense of any claim or proceeding at its own cost and expense, if the Insured so requests.[2]

\* \* \*

## V. LIMIT OF LIABILITY - RETAINED LIMIT:

The company's limit of liability shall be only for the ultimate net loss in excess of:

(a) the applicable limit(s) of the underlying Policy(ies) listed in Schedule A hereof; or

(b) with respect to Coverage l(a) or l(b) or both combined, the greater of either:

(1) the amount designated in the declarations as "Retained Limit" as the result of any one

_____

[2] This paragraph is included in Policy 71968 via endorsement.

APPALACHIAN INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT AND EQUITABLE REIMBURSEMENT AND DEMAND FOR JURY TRIAL

occurrence not covered by the Policy(ies) so listed; or

    (2)    the applicable limit(s) of any other underlying insurance collectible by the insured; …

* * *

(herein called the retained limit) [. . .].

* * *

In the event of the reduction or exhaustion of the aggregate limit(s) of liability of the underlying Policy(ies) listed in Schedule A by reason of losses paid thereunder during the term of this Policy, this Policy (1) in the event of reduction, shall pay the excess of the reduced underlying limit; or (2) in the event of exhaustion, shall continue in force as underlying insurance.

* * *

**CONDITIONS**

* * *

**4.    OTHER DEFINITIONS**

* * *

(d)    "Ultimate net loss" means the total of the following sums with respect to such occurrence:

    (1)    all sums which the insured, or any company as his insurer, or both, became legally obligated to pay as damages, whether by reason of adjudication or settlement, because of personal injury, property damage or advertising liability to which this Policy applies, and

    (2)    all expenses incurred by the insured in the investigation, negotiation, settlement and defense of any claim or suit seeking such damages, excluding only the salaries of the insured's regular employees, provided "ultimate net loss" shall not include any damages or expense because of liability excluded by this Policy.

This Policy shall not apply to defense, investigation, settlement or legal expenses covered by underlying insurance.

Case: 26-03029    Doc #: 1    Filed: 06/26/26    Entered: 06/26/26 13:46:09    Page 8 of 31

\* \* \*

**9. OTHER INSURANCE**[3]

If other collectible insurance with any other insurer is available to the insured covering a loss also covered hereunder (except insurance purchased to apply in excess of the sum of the Retained Limit and the limit of liability hereunder), the insurance hereunder shall be in excess of, and not contribute with, such other insurance. If collectible insurance under any other Policy(ies) of the company is available to the insured, covering a loss hereunder (other than underlying insurance of which the insurance afforded by this Policy is in excess), the company's limit of liability shall in no event exceed the greater or greatest limit of liability applicable to such loss under this or any other such Policy(ies).

\* \* \*

**10. UNDERLYING INSURANCE**[4]

This Policy shall not apply to investigation or legal expenses for which insurance is provided by underlying insurance. If such underlying insurance is exhausted by any occurrence, the company shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the insured resulting from the same occurrence, but only where this Policy applies immediately in excess of such underlying insurance, without the intervention of any self-insurance or excess insurance of another carrier.

\* \* \*

**15. MAINTENANCE OF UNDERLYING INSURANCE**[5]

It is understood and agreed by the insured that the underlying Policy(ies) listed in Schedule A, or renewals or replacements thereof not more restricted, shall be maintained in force during the currency of this Policy, WITH SUCH COVERAGE AFFORDED BY SAID UNDERLYING POLICY(IES) BEING MAINTAINED TO THE SAME EXTENT AS WAS AFFORDED AT THE INCEPTION DATE OF THIS POLICY, except for any reduction of the aggregate limit(s) contained therein solely by payment of claims in respect of occurrences happening during the Policy period. In the event of failure by the insured so to maintain such Policy(ies) in force, the insurance afforded by this Policy shall apply in the same manner it would have applied had such Policy(ies) been so maintained in force.

---

[3] This section appears as "10. Other Insurance" in policy number 71968.

[4] This section appears as "11. Underlying Insurance" in policy number 71968 .

[5] This section appears as "16. Maintenance of Underlying Insurance" in policy number 71968.

Case: 26-03029     Doc# 1     Filed: 06/26/26     Entered: 06/26/26 13:46:09     Page 9 of 31

* * *

30. The Schedule A of the Excess Policies includes a "comprehensive general liability" policy issued by St. Paul Fire and Marine from July 8, 1975 to July 8, 1978 ("Underlying Policy").

31. To date, there has been no indication or notice that the limits underlying the Excess Policies have been exhausted in accordance with the terms of the policies, or that any of the Appalachian Claims not covered under the Underlying Policy but covered under the Excess Policies. Therefore, Appalachian has no immediate potential coverage obligations.

32. No such exhaustion has been demonstrated for any of the Appalachian Claims.

33. The Excess Policies provide coverage for "ultimate net loss" caused by an occurrence as described more fully in the terms of the Excess Policies:

**THE COMPANY NAMED ON THE DECLARATIONS PAGE**

* * *

Agrees with the insured named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions and other terms of this Policy:

**INSURING AGREEMENTS**

**I.   COVERAGE**

The company agrees to pay on behalf of the insured for ultimate net loss in excess of the retained limit hereinafter stated, which the insured may sustain by reason of liability imposed upon the insured by law, or assumed by the insured under contract arising out of:

(a)   Personal Injury liability

For damages including damages for care and loss of services, because of personal injury, including death at any time resulting therefrom, sustained by any person or persons;

* * *

Case: 26-03029    Doc#: 1    Filed: 06/26/26    Entered: 06/26/26 13:46:09    Page 10 of 31

**CONDITIONS**

* * *

**4.     OTHER DEFINITIONS**

(a)     "Personal injury" means (1) bodily injury, sickness, disease, disability, shock, mental anguish and mental injury; … (5) assault and battery not committed by or at the direction of the insured, . . . .

* * *

(d)     "Ultimate net loss" means the total of the following sums with respect to such occurrence:

(1)     all sums which the insured, or any company as his insurer, or both, became legally obligated to pay as damages, whether by reason of adjudication or settlement, because of personal injury, property damage or advertising liability to which this Policy applies, and

(2)     all expenses incurred by the insured in the investigation, negotiation, settlement and defense of any claim or suit seeking such damages, excluding only the salaries of the insured's regular employees, provided "ultimate net loss" shall not include any damages or expense because of liability excluded by this Policy.

* * *

(f)     "Occurrence" means an accident, including continuous or repeated exposure to conditions, which results in personal injury or property damage neither expected nor intended from the standpoint of the insured.

* * *

34.     The terms, conditions, and provisions of the Excess Policies require notice, cooperation, and compliance with all conditions precedent.

35.     Specifically, the Excess Policies provide, in pertinent part, the following:

*5. NOTICE OF OCCURRENCE*

Case: 26-03029     Doc#1     Filed 06/26/26     Entered 06/26/26 13:46:09     Page 11 of 31

Upon the happening of an occurrence reasonably likely to involve the company hereunder, written notice shall be given as soon as practicable to the company or its authorized representative. Such notice shall contain particulars sufficient to identify the insured and the fullest information obtainable at the time. The insured shall give like notice of any claim made on account of such occurrence.

If legal proceedings are begun the insured, when requested by the company, shall forward to it each paper thereon, or a copy thereof, received by the insured or the insured's representatives, together with copies of reports of investigations made by the insured with respect to such claim proceedings.

**B.** ***Information Regarding the Archdiocese's Prior Knowledge of Abuse by Priests and Other Individuals and Widespread Coverup of Its Knowledge Of Abuse***

36. The Underlying Claims pertaining to alleged abuse by Father Pritchard, including the Appalachian Pritchard Claims, allege that the RCASF had knowledge of abusive clergy.

37. The Master Complaint in JCCP 5108 alleges intentional conduct, negligent supervision, and deliberate indifference.

38. Specifically, the complaints filed in the Underlying Claims allege the RCASF's knowing and intentional conduct and suggest that the Archdiocese had broad institutional awareness of the sexual abuse problem universally at issue in the Underlying Claims. This is consistent with allegations in similar lawsuits filed throughout the United States against other entities affiliated with the Catholic Church. This pattern of allegations lends credence to the allegations specific to the Archdiocese.

39. Appalachian has not concluded that the allegations in specific Appalachian Claims, including but not limited to the Appalachian Pritchard Claims, are valid or that any of the claims are meritorious. Appalachian continues to investigate each of the Appalachian Claims, including whether the allegations of injury caused by sexual abuse were neither expected nor intended from the standpoint of the RCASF, based on the incomplete information provided to date.

40. Although the RCASF has provided some information to Appalachian about certain Underlying Claims and some of the Appalachian Claims, that information is incomplete and insufficient. Consequently, Appalachian will seek discovery for information relevant to each of the Appalachian Claims. To the extent that specific information obtained in discovery does not support coverage as to a particular Appalachian Claim, Appalachian will ultimately seek coverage

declarations based on that information, as to that specific claim.

41. Aside from the limited information provided by the Archdiocese, Appalachian has also obtained information about alleged sexual abuse within the Catholic Church, and within the Archdiocese specifically, from publicly available sources. This information is relevant in determining whether the Excess Policies provide coverage for any of the Appalachian Claims, including but not limited to the Appalachian Pritchard Claims, that allegedly fall within the policy periods reflected in the Excess Policies.

42. Publicly available information suggests that the Church has historically promoted a culture of secrecy intended to protect the Church from scandal. For example, authors Thomas P. Doyle, A. W.R. Sipe, and Patrick J. Wall write in *Sex, Priests, and Secret Codes: The Catholic Church's 2,000-Year Paper Trail of Sexual Abuse* that all Cardinals in the Catholic Church (the group of bishops who elect the Pope) must take an oath never to divulge information confided to them that "might bring harm or dishonor to the Holy Church."

43. In *Kavanaugh v. Roman Catholic Archbishop of San Francisco*, San Francisco County Superior Court, Case No. CGC-03-400003, Dennis Kavanaugh filed a civil lawsuit against the RCASF alleging that the late Father Joseph Pritchard had molested him during the early 1970s, while he was a student at St. Martin of Tours, where Father Pritchard had been assigned in 1971. For purposes of adjudication, the Archdiocese conceded and did not dispute that Kavanaugh was abused. Rather, the sole question before the jury was whether Father Pritchard's superiors knew or should have known about the abuse. In answer to this sole question, the jury determined that "the Archbishop of San Francisco, by December 31, 1973, kn[e]w or ha[d] reason to know, or was . . . otherwise on notice, that Father Joseph Pritchard had committed unlawful sexual conduct." Yet Father Pritchard continued working at St. Martin of Tours until 1979 and then was transferred to St. Nicholas Catholic School in Los Altos, California where he continued working until 1988.

44. In addition, nearly two decades before Father Pritchard sexually abused Kavanaugh, in the late 1950s, he allegedly sexually abused his own 10-year old nephew. At the time, Father Pritchard was teaching at Junipero Serra High School in San Mateo, which was then a part of the Archdiocese. The nephew's mother allegedly reported the abuse to the school in 1959, but no further

Case: 26-03029    Doc#: 1    Filed: 06/26/26    Entered: 06/26/26 13:46:09    Page 13 of 31

action was taken.

45. In the Underlying Claims, including the Appalachian Claims and the Appalachian Pritchard Claims, the Claimants, who include victims of alleged abuse by Father Pritchard, contend that the Catholic Church's broader policy of secrecy fostered an environment in which sexual predation by clergy (and other Catholic Church representatives) was implicitly condoned and actively covered up by Catholic Church officials.

46. The Underlying Claims, including the Appalachian Claims and the Appalachian Pritchard Claims, assert that the Archdiocese or the Affiliates knew about the sexual abuse of minors. Specifically, the Master Complaint for the Underlying Claims alleges:

> [T]he RELIGIOUS ENTITY DEFENDANTS, and each of them, knew or should have known that the DOE PERPETRATOR was unfit, posed a risk of harm to minor children, and/or posed a risk of childhood sexual assault to minor children in its care, custody and control. Specifically, RELIGIOUS ENTITY DEFENDANTS knew or should have known, or were otherwise on notice, that the DOE PERPETRATOR had engaged in misconduct that created the risk of childhood sexual assault and failed to take reasonable steps or to implement reasonable safeguards to avoid acts of childhood sexual assault by the DOE PERPETRATOR on minors, including Plaintiff."

(Master Complaint in JCCP 5108, ¶ 33.)

47. The Master Complaint further avers that the Archdiocese or the Affiliates committed intentional conduct by hiring, not supervising, or transferring to other posts clergy about whom they had notice regarding abuse of the plaintiff or other victims. Specifically, the Master Complaint contends:

> Defendants also intentionally and willfully implemented various measures intended and designed to, or which effectively, made the DOE PERPETRATOR's conduct harder to detect including, but not limited to:
>
> a. Assigning and permitting the DOE PERPETRATOR to remain in a position of authority and trust after DEFENDANT RELIGIOUS ENTITIES and DOES 1 through 500 knew or should have known that was an unfit agent, servant, employee, member and/or volunteer;
>
> b. Assigning and permitting the DOE PERPETRATOR to remain in a position of authority and trust after DEFENDANT RELIGIOUS ENTITIES and

Case: 26-03029    Doc#: 26    Filed: 06/26/26    Entered: 06/26/26 13:46:09    Page 14 of 31

DOES 1 through 500 knew or should have known that was in misconduct that created a risk of childhood sexual assault to be perpetrated by the DOE PERPETRATOR;

c. Placing the DOE PERPETRATOR in a separate and secluded environment, including placing him in charge of children, which allowed the DOE PERPETRATOR to sexually and physically interact with and assault the children, including Plaintiff;

d. Authorizing the DOE PERPETRATOR to come into contact with minors, including Plaintiff, without adequate supervision;

e. Failing to inform, or concealing from Plaintiff's parents and law enforcement officials the fact that Plaintiff and others were or may have been sexually assaulted after Defendants knew or should have known that the DOE PERPETRATOR may have sexually assaulted Plaintiff or others, thereby enabling Plaintiff to continue to be endangered and sexually assaulted, and/or creating the circumstance where the Plaintiff and others were less likely to receive medical/mental health care and treatment, thus exacerbating the harm to Plaintiff;

f. Holding out and affirming the DOE PERPETRATOR to Plaintiff and Plaintiffs parents, other children and their parents, and to the community as being in good standing and trustworthy;

g. Failing to take reasonable steps, and to implement reasonable safeguards to avoid acts of unlawful sexual conduct by the DOE PERPETRATOR with students minor children; and

h. Failing to put in place a system or procedure to supervise or monitor employees, volunteers, representatives or agents to insure that they did not molest or assault minors in Defendants' custody or care, including Plaintiff.

(Master Complaint in JCCP 5108, ¶ 36.)

48. The Underlying Claims, which include the Appalachian Claims and the Appalachian

Pritchard Claims, further assert that the Archdiocese or the Affiliates failed to stop the sexual abuse, covered it up, and then lied about it. Specifically, the Master Complaint alleges the following: "This failure was a part of Defendants' intended plan and arrangement to conceal wrongful acts, to avoid and inhibit detection, to block public disclosure, to avoid scandal, to avoid the disclosure of their tolerance of child sexual abuse and assault, to preserve a false appearance of propriety, and to avoid investigation and action by public authority including law enforcement." (Master Complaint in JCCP 5108, ¶ 39.) The Underlying Claims, including the Appalachian Claims and the Appalachian Pritchard Claims, allege different legal theories revolving around these institutional failures concerning widespread sexual abuse, including intentional torts, strict liability, and negligence.

49. Accordingly, Appalachian contends that coverage is precluded for any of the Underlying Claims, including Appalachian Claims and the Appalachian Pritchard Claims under the Excess Policies and the Doe Actions.

### *C. The Archdiocese Released Certain Claims In the 2005 Clergy III Settlement Agreement.*

50. One of the claimants to the Underlying Claims (which is also an Appalachian Claim and an Appalachian Pritchard Claim and one of the Doe Actions) – identified in his Complaint as John SF-1 Doe, San Francisco County Superior Court Case No. CGC-20-584162 and on his Proof of Claim, filed in the Main Bankruptcy action as 564-383 – alleges that he was sexually molested by Father Pritchard between 1974 and 1977. This Claimant's two brothers (the "Doe Brothers") previously alleged they were also molested by Father Pritchard.

51. The claims relating to the Doe Brothers were resolved as part of a Confidential Settlement Agreement and Mutual Release that was entered in July 2005 between the Archdiocese and its insurers, including Appalachian ("Release No. 1"). Paragraph 3.02 of Release No. 1 provides that the Archdiocese releases all past, present and future actions, known or unknown, which relate in any manner to the "Abuse Claims." Paragraph 4.01 of Release No. 1 provides that it was the intention of the Parties that "the Insurers shall have no further financial obligation of any kind with respect to the Abuse Claims."

52. The term "Abuse Claims" is defined in Paragraph 1.12 of Release No. 1 to include:

Case No.

Case: 26-03029    Doc#: 1    Filed: 06/26/26    Entered: 06/26/26 13:46:09    Page 16 of 31

> "Abuse Claims" means (1) the lawsuits identified in Rider A to this Agreement, and (2) any other claim asserted by or on behalf of the plaintiffs in the lawsuits identified in Rider A and/or any claim asserted by any person related to a plaintiff by birth, ... which claim arises out of or is based, directly or indirectly, upon actual or alleged acts of sexual abuse. . . and/or any other actual or alleged conduct constituting "childhood sexual abuse" for purposes of Cal. Civ. Proc. Code 340.1....

53. The lawsuit filed on behalf of the Doe Brothers is listed on Rider A to Release No. 1. Since Claimant John SF-1 Doe is a person related by birth to the Doe Brothers, his claim was released by the RCASF in 2005 via Release No. 1.

54. Moreover, Appalachian is informed and believes and thereon alleges that the Archdiocese was aware that John SF-1 Doe was also one of Father Pritchard's alleged victims at the time Release No. 1 was entered. Finally, inasmuch as a jury, in 2005, determined that the RCASF knew from at least December 31, 1973, that Pritchard sexually abused children, Appalachian has no potential payment obligations with respect to the claim of John SF-1 Doe, who alleges that the abuse started in 1974.

55. A second Confidential Settlement Agreement and Mutual Release was entered in or about August 2005, between the Archdiocese and its insurers, including Appalachian ("Release No. 2"). Paragraph 3.02 of Release No. 2 provides that the Archdiocese releases all past, present and future actions, known or unknown, which relate in any manner to the "Abuse Claims." Paragraph 4.01 of Release No. 2 provides that it was the intention of the Parties that "the Insurers shall have no further financial obligation of any kind with respect to the Abuse Claims."

56. The term "Abuse Claims" is defined in Paragraph 1.12 of Release No. 2 to include:

> "Abuse Claims" means (1) the lawsuits identified in Rider A to this Agreement, and (2) any other claim asserted by or on behalf of the plaintiffs in the lawsuits identified in Rider A and/or any claim asserted by any person related to a plaintiff by birth, ... which claim arises out of or is based, directly or indirectly, upon actual or alleged acts of sexual abuse. . . and/or any other actual or alleged conduct constituting "childhood sexual abuse" for purposes of Cal. Civ. Proc. Code 340.1....

57. The Rider A to Release No. 2 identifies lawsuits being settled as of about August 2005 involving claims by persons related by birth to individuals who are now part of the Appalachian Claims.

APPALACHIAN INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT AND EQUITABLE REIMBURSEMENT AND DEMAND FOR JURY TRIAL

58. Accordingly, at least 4 of the Appalachian Claims were released via Release No. 2.

***D. The Limits Of Liability In The Underlying Policy Have Not Been Exhausted So That Appalachian's Excess Coverage Is Not Implicated.***

59. Appalachian has no immediate potential coverage obligation under the Excess Policies unless and until the applicable underlying insurance policy limits are exhausted or the Underlying Policy does not provide coverage for the Appalachian Claims and the Excess Policies do. To date, there has been no indication or notice that the limits underlying the Excess Policies have been exhausted or that any other precondition to coverage has been met. Therefore, Appalachian has no immediate potential coverage obligations. Notwithstanding the foregoing, Appalachian contributed to the settlement of the Doe Actions under an express reservation of rights and contends that it is entitled to reimbursement of the settlement payment because the claim is not covered under the Excess Policies.

60. At no time prior to the issuance of the Excess Policies did anyone acting on behalf of the Archdiocese advise Appalachian about the then-existing and known problem of sexual abuse by people in positions of power and authority within the Catholic Church, and more specifically, the Archdiocese. Indeed, to date, the Archdiocese has never provided Appalachian with a full accounting of sexual abuse committed by Archdiocese employees and agents.

### FIRST CAUSE OF ACTION
### (DECLARATORY JUDGMENT - NO DUTY TO DEFEND OR INDEMNIFY UNDERLYING CLAIMS ALLEGING ABUSE BY FATHER JOSEPH PRITCHARD)

61. Appalachian incorporates by reference all preceding paragraphs as if fully set forth herein.

62. Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and obligations of the parties as they relate to the Excess Policies because an actual controversy exists.

63. An actual controversy exists herein between Plaintiff and the Archdiocese regarding whether Appalachian has any obligation to defend and/or indemnify the Archdiocese for the Appalachian Pritchard Claims.

64. Father Pritchard has been accused in certain of the Underlying Claims of sexually abusing minors, and in 2003, his nephew filed suit against him, alleging childhood sexual abuse that

Case: 26-03029    Doc#: 1    Filed: 06/26/26    Entered: 06/26/26 13:46:09    Page 18 of 31

allegedly began in 1957 or 1958 and allegedly ended in 1959, when his mother, Father Pritchard's sister, allegedly reported him to school officials at Junipero Serra High School.

65. In 2005, the jury in the *Kavanaugh* matter found that "the Archbishop of San Francisco, by December 31, 1973, kn[e]w or ha[d] reason to know, or was . . . otherwise on notice, that Father Joseph Pritchard had committed unlawful sexual conduct."

66. It is alleged in the Underlying Claims that the Archdiocese and/or the Affiliates engaged in a pattern of continuously reassigning and transferring Father Pritchard to different parishes despite knowledge that he was a pedophile.

67. It is alleged in the Underlying Claims that the Archdiocese and/or the Affiliates allowed and cultivated a culture of opportunity for Father Pritchard to sexually abuse children.

And that the Archdiocese and/or the Affiliates failed to investigate prior allegations of sexual abuse of children by Father Pritchard and failed to report the abuse to the authorities.

68. It is alleged in the Underlying Claims that despite receiving credible allegations of sexual abuse of children by Father Pritchard, the Archdiocese and/or the Affiliates named in the Underlying Claims, including the Appalachian Pritchard Claims, acted to conceal these allegations in an effort to avoid scandal and accountability. Appalachian has no obligation under the Excess Policies to defend and/or indemnify the Archdiocese and/or the Affiliates for the Appalachian Pritchard Claims because it is alleged that the abuse that is the subject of these suits was known by the Archdiocese and/or the Affiliates to be certain or substantially certain to occur, and therefore the alleged injury from the abuse was either expected or intended from the standpoint of RCASF and was otherwise not fortuitous.

69. At a minimum, the 2005 jury verdict in the *Kavanaugh* matter, which found that "the Archbishop of San Francisco, by December 31, 1973, kn[e]w or ha[d] reason to know, or was . . . otherwise on notice, that Father Joseph Pritchard had committed unlawful sexual conduct", has a preclusive effect for any Underlying Claims, including the Appalachian Pritchard Claims, brought against the RCASF that alleges abuse by Father Pritchard after December 31, 1973 because:

   a. The issue in this case is identical to the issue decided in the prior *Kavanaugh* matter.

Case: 26-03029    Doc#1    Filed: 06/26/26    Entered: 06/26/26 13:46:09    Page 19 of 31

b. The issue was actually litigated in the *Kavanaugh* matter.

c. The determination of the issue was a critical and necessary part of the judgment in the *Kavanaugh* case.

d. The party against whom preclusion is asserted (*i.e.*, the RCASF) had a full and fair opportunity to litigate the issue in the *Kavanaugh* case.

Under 28 U.S.C.A. § 1738, federal courts must give the same preclusive effect to a state court judgment as it would receive in the courts of the state where the judgment was rendered. *See In re Mickletz*, 544 B.R. 804 (2016).

70. Accordingly, Appalachian requests that this Court declare that Appalachian has no obligation under the Appalachian Excess Policies to defend and/or indemnify the RCASF and/or the Affiliates for the Appalachian Pritchard Claims.

71. A judicial determination is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and duties as aforementioned. Said controversy is incapable of resolution without judicial determination.

## SECOND CAUSE OF ACTION
**(DECLARATORY JUDGMENT - NO DUTY TO DEFEND OR INDEMNIFY UNDERLYING CLAIMS THAT WERE RELEASED BY THE 2005 SETTLEMENTS)**

72. Appalachian incorporates by reference all preceding paragraphs as if fully set forth herein.

73. Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and obligations of the parties under the Excess Policies on the grounds that an actual controversy exists.

74. An actual controversy exists herein between Plaintiff and RCASF regarding Release No. 1 and Release No. 2.

75. Paragraph 3.02 of Release No. 1 and Release No. 2 provides that the Archdiocese releases all past, present and future actions, known or unknown, which relate in any manner to the "Abuse Claims." Paragraph 4.01 of Release No. 1 and Release No. 2 provides that it was the intention of the Parties that "the Insurers shall have no further financial obligation of any kind with respect to the Abuse Claims."

76. The term "Abuse Claims" is defined in Paragraph 1.12 of Release No. 1 and

APPALACHIAN INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT AND EQUITABLE REIMBURSEMENT AND DEMAND FOR TRIAL

Release No. 2 to include:

> "Abuse Claims" means (1) the lawsuits identified in Rider A to this Agreement, and (2) any other claim asserted by or on behalf of the plaintiffs in the lawsuits identified in Rider A and/or any claim asserted by any person related to a plaintiff by birth, ... which claim arises out of or is based, directly or indirectly, upon actual or alleged acts of sexual abuse. . . and/or any other actual or alleged conduct constituting "childhood sexual abuse" for purposes of Cal. Civ. Proc. Code 340.1....

77. Lawsuits that were filed on behalf of various claimants, which settled in 2005, are listed on Rider A to Release No. 1 and Release No. 2.

78. Appalachian is informed and believes and, on that basis, alleges that at least 4 claimants in the Underlying Claims which were tendered to Appalachian (i.e., Appalachian Claims) are related by birth to claimants that settled their claims in 2005, and on that basis, their claims were released by the RCASF. Hence, Plaintiff has no duty or obligation to defend and/or indemnify the RCASF for those Appalachian Claims.

79. Finally, inasmuch as a jury, in 2005, determined that the RCASF knew from at least December 31, 1973, that Father Pritchard sexually abused children, Appalachian has no obligations under the Excess Policies with respect to any Appalachian Claims involving allegations of abuse after December 31, 1973.

80. Accordingly, Appalachian requests that this Court declare that it has no obligation under the Excess Policies to defend and/or indemnify the RCASF and/or the Affiliates for Appalachian Claims based on Release No. 1 (which includes at least one of the Doe Actions (John SF-1 Doe)) and Release No. 2.

81. A judicial determination is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and duties as aforementioned. Said controversy is incapable of resolution without judicial determination.

### THIRD CAUSE OF ACTION
**(DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201 – NO DUTY TO DEFEND OR INDEMNIFY – NO OCCURRENCE)**

82. Appalachian incorporates by reference all preceding paragraphs as if fully set forth herein.

83. Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and obligations of

the parties under the Excess Policies on the grounds that an actual controversy exists.

84. Appalachian issued the Excess Policies to the Archdiocese.

85. The Excess Policies only cover injury to a third party, caused by an occurrence, defined as "an accident, including injurious exposure to conditions, which results, during the policy period, in personal injury or property damage *neither expected nor intended from the standpoint of the Insured*" and which occurred during the policy's stated "Policy period." (emphasis added).

86. An actual and justiciable controversy exists among the parties. Appalachian desires a judicial determination of the respective rights and duties of the parties. Such declaration is necessary and proper at this time in order that the parties may ascertain their respective rights and duties.

87. The Excess Policies afford coverage for liability imposed on the insured for damages because of injury to which the policy applies, caused by an "occurrence," which is an accident that results in injury during the policy period neither expected nor intended from the standpoint of the Archdiocese.

88. Based upon the general publicly available information set forth herein, and the specific information set forth herein regarding the Archdiocese's knowledge of Father Pritchard's proclivities at least as early as 1973, any injuries or damages reflected in the Appalachian Claims, including but not limited to the Appalachian Pritchard Claims, were either expected or intended from the standpoint of the Archdiocese.

89. Because the Underlying Claims tendered to Appalachian were not caused by an "occurrence" that resulted in personal injury or damage during the applicable policy periods for the Excess Policies that was neither expected nor intended from the standpoint of the Archdiocese, there is no coverage for any of the Appalachian Claims or Appalachian Pritchard Claims under the Excess Policies.

90. Accordingly, Appalachian requests that this Court declare that it has no obligation under the Excess Policies to defend and/or indemnify the RCASF and/or the Affiliates for the Appalachian Claims or the Appalachian Pritchard Claims.

91. A judicial determination is necessary and appropriate at this time under the

Case: 26-03029    Doc#1    Filed: 06/26/26    Entered: 06/26/26 13:46:09    Page 22 of 31

circumstances in order that the parties may ascertain their rights and duties as aforementioned. Said controversy is incapable of resolution without judicial determination.

### FOURTH CAUSE OF ACTION
**(DECLARATORY JUDGMENT – NO DUTY TO DEFEND OR INDEMNIFY FOR ANY PERSONAL INJURY THAT OCCURRED OUTSIDE OF THE POLICY PERIOD)**

92. Appalachian incorporates by reference all preceding paragraphs as if fully set forth herein.

93. Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and obligations of the parties under the Excess Policies on the grounds that an actual controversy exists.

94. An actual controversy exists herein between Appalachian and the RCASF regarding whether Appalachian owes any duty or obligation to the RCASF for claims of sexual abuse that resulted in injury outside the Excess Policies' stated policy period.

95. Appalachian seeks a declaration that it has no obligation to afford coverage to the Archdiocese and/or any Affiliates for any personal injury that occurred outside of the Excess Policies' stated policy periods, and, to the extent there exists any obligation at all, Appalachian is only obligated to provide coverage to the Archdiocese and/or the Affiliates for that portion of any bodily injury that occurred during the Excess Policies' stated policy periods.

96. A judicial determination is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and duties as aforementioned. Said controversy is incapable of resolution without judicial determination.

### FIFTH CAUSE OF ACTION
**(DECLARATORY JUDGMENT –NO EXHAUSTION OF PRIMARY LIMITS)**

97. Appalachian incorporates by reference all preceding paragraphs as if fully set forth herein.

98. Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and obligations of the parties under the Excess Policies on the grounds that an actual controversy exists.

99. The RCASF has demanded that Appalachian defend and indemnify it under the Excess Policies in connection with the Appalachian Claims.

Case: 26-03029    Doc#1    Filed: 06/26/26    Entered: 06/26/26 13:46:09    Page 23 of 31

100. For each of the Excess Policies, unless and until all applicable primary limits are exhausted in accordance with each policy's terms, coverage under the Excess Policies does not attach for any of the Appalachian Claims.

101. Appalachian seeks a declaration regarding its rights and duties under the Excess Policies concerning application of the foregoing provisions and attachment of coverage under the Excess Policies.

102. A judicial determination is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and duties as aforementioned. Said controversy is incapable of resolution without judicial determination.

## SIXTH CAUSE OF ACTION
### (DECLARATORY JUDGMENT –BREACH OF THE POLICY'S TERMS AND CONDITIONS)

103. Appalachian incorporates by reference all preceding paragraphs as if fully set forth herein.

104. Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and obligations of the parties under the Excess Policies on the grounds that an actual controversy exists.

105. The RCASF has demanded that Appalachian defend and indemnify it under the Excess Policies in connection with the Appalachian Claims.

106. An actual controversy exists herein between Appalachian and the RCASF regarding whether RCASF has breached any term or condition of the Excess Policies and therefore, Appalachian has no obligation to defend or indemnify the RCASF, including without limitation:

    a. to the extent that the RCASF has failed to provide timely notice of an occurrence, claim, or suit, as required under the Excess Policies;

    b. to the extent that the Appalachian Claims do not involve bodily injury proven to have been sustained during the Excess Policies' period;

    c. to the extent that the remaining terms and conditions of the Excess Policies bars coverage for the Appalachian Claims, including the Appalachian Pritchard Claims; and

    d. to the extent that the RCASF has failed to cooperate with Appalachian as required by

Case: 26-03029    Doc#: 1    Filed: 06/26/26    Entered: 06/26/26 13:46:09    Page 24 of 31

the Notice of Occurrence provision in the Excess Policies resulting in prejudice to Appalachian.

107. Appalachian seeks a declaration regarding its rights and duties under the Excess Policies concerning application of the foregoing provisions under the Excess Policies.

108. A judicial determination is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and duties as aforementioned. Said controversy is incapable of resolution without judicial determination.

## SEVENTH CAUSE OF ACTION
### (EQUITABLE REIMBURSEMENT FOR SETTLEMENT PAYMENTS ON NON-COVERED CLAIMS)

109. Plaintiff incorporates, restates, and re-alleges all of the preceding paragraphs as though fully set forth herein.

110. The Archdiocese and certain of its insurers, including Appalachian, have settled the JOHN SF-1 DOE action (Case No. CGC-20-584162) and the JOHN DOE SF 1013 action (Case No. CGC-20-583648) (the Doe Actions).

111. With respect to the JOHN SF-1 DOE Action, Appalachian contributed to the settlement of that Action. Appalachian did not pay these sums as a volunteer.

112. With respect to the JOHN DOE SF 1013 Action, Appalachian contributed to the settlement of that Action. Appalachian did not pay these sums as a volunteer.

113. Prior to attending mediation of the Doe Actions and again prior to finalizing and funding the settlement of the Doe Actions, Appalachian provided the Archdiocese with notice that Appalachian reserved all rights to recoup settlement amounts for claims or damages not covered by the Excess Policies. On February 9, 2026, Appalachian also provided the Archdiocese with notice that Appalachian intended to accept the proposed settlements and was doing so subject to a full and complete reservation of rights, including the right to recoup settlement amounts paid for claims or damages not covered by the Excess Policies.

114. In its February 9, 2026 notice to the Archdiocese, Appalachian expressly offered the Archdiocese the opportunity to either undertake its own defense of the Doe Actions or waive any potential claim based on the failure to accept the proposed settlement offers.

Case: 26-03029    Doc#: 1    Filed: 06/26/26    Entered: 06/26/26 13:46:09    Page 25 of 31

115. The Archdiocese participated directly in the settlement of the Doe Actions. The settlement agreement approved and signed by the Archdiocese regarding the Doe Actions repeatedly references Appalachian's and the other insurers' reservation of rights to seek and obtain reimbursement from the Archdiocese of amounts paid to settle the Doe Actions.

116. Under California law, an insurer has the right of reimbursement for settlement payments made on behalf of an insured for claims that are ultimately determined to be non-covered.

117. Because the Doe Actions do not fall within the coverage provided by the Excess Policies, the Archdiocese has been unjustly enriched at Appalachian's expense.

118. As a result of the Archdiocese's unjust enrichment, a quasi-contractual right of reimbursement has arisen in favor of Appalachian in the amounts paid for the defense and settlement of claims not covered under the Excess Policies, plus interest.

## EIGHTH CAUSE OF ACTION
### (DECLARATORY JUDGMENT – NO DUTY TO DEFEND OR INDEMNIFY THE DOE ACTIONS)

119. Plaintiff incorporates, restates, and re-alleges all of the preceding paragraphs as though fully set forth herein.

120. Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and obligations of the parties under the Excess Policies on the grounds that an actual controversy exists.

121. The Doe Actions involve claims of sexual abuse by Father Joseph Pritchard that allegedly occurred after December 31, 1973.

122. In 2005, a jury in *Kavanaugh v. Roman Catholic Archbishop of San Francisco*, San Francisco County Superior Court, Case No. CGC-03-400003, determined that "the Archbishop of San Francisco, by December 31, 1973, kn[e]w or ha[d] reason to know, or was . . . otherwise on notice, that Father Joseph Pritchard had committed unlawful sexual conduct."

123. Under the doctrine of collateral estoppel, the 2005 jury verdict has preclusive effect as to the Archdiocese's knowledge of Father Pritchard's abuse by December 31, 1973, because:

    a. The issue in this case is identical to the issue decided in the prior *Kavanaugh* matter;

    b. The issue was actually litigated in the *Kavanaugh* matter;

    c. The determination of the issue was a critical and necessary part of the judgment in

26

Case: 26-03029    Doc#1    Filed: 06/26/26    Entered: 06/26/26 13:46:09    Page 26 of 31

the *Kavanaugh* case; and

d. The RCASF had a full and fair opportunity to litigate the issue in the *Kavanaugh* case.

124. Because the Archdiocese knew or had reason to know by December 31, 1973, that Father Pritchard had committed unlawful sexual conduct, the sexual abuse alleged in the Doe Actions, which occurred after December 31, 1973, was expected or intended from the standpoint of the Archdiocese.

125. The Excess Policies provide coverage only for personal injury caused by an "occurrence," defined as "an accident, including injurious exposure to conditions, which results, during the policy period, in personal injury or property damage neither expected nor intended from the standpoint of the insured."

126. Because the injury alleged in the Doe Actions was expected or intended from the standpoint of the Archdiocese, the Doe Actions do not involve an "occurrence" as defined by the Excess Policies, and therefore Appalachian has no duty to defend or indemnify the Archdiocese for the Doe Actions.

127. Additionally, Appalachian is informed and believes and thereon alleges that the claimant in the JOHN SF-1 DOE Action is related by birth to plaintiffs whose claims were resolved as part of Release No. 1.

128. Paragraph 1.12 of Release No. 1 defines "Abuse Claims" to include:

"(1) the lawsuits identified in Rider A to this Agreement, and (2) any other claim asserted by or on behalf of the plaintiffs in the lawsuits identified in Rider A and/or any claim asserted by any person related to a plaintiff by birth, ... which claim arises out of or is based, directly or indirectly, upon actual or alleged acts of sexual abuse. . . and/or any other actual or alleged conduct constituting 'childhood sexual abuse' for purposes of Cal. Civ. Proc. Code 340.1...."

129. Paragraph 3.02 of Release No. 1 provides that the Archdiocese released all past, present, and future actions, known or unknown, which relate in any manner to the "Abuse Claims."

130. Paragraph 4.01 of Release No. 1 provides that it was the intention of the parties that "the Insurers shall have no further financial obligation of any kind with respect to the Abuse Claims."

Case: 26-03029    Doc#: 1    Filed: 06/26/26    Entered: 06/26/26 13:46:09    Page 27 of 31

131. Because the claimant in the JOHN SF-1 DOE Action is related by birth to plaintiffs whose claims were resolved in Release No. 1, the JOHN SF-1 DOE Action falls within the definition of "Abuse Claims" that were released under Release No. 1, and Appalachian has no duty to defend or indemnify the Archdiocese for the JOHN SF-1 DOE Action.

132. Accordingly, Appalachian seeks a declaration that it has no duty under the Excess Policies to defend or indemnify the Archdiocese for the JOHN SF-1 DOE Action based on: (a) the preclusive effect of the 2005 jury verdict in *Kavanaugh* establishing that the abuse was expected or intended from the standpoint of the Archdiocese; and/or (b) Release No. 1, which bars coverage for claims related by birth to previously settled claims.

133. Appalachian seeks a declaration that it has no duty under the Excess Policies to defend or indemnify the Archdiocese for the JOHN DOE SF 1013 Action based on the preclusive effect of the 2005 jury verdict in *Kavanaugh* establishing that the abuse was expected or intended from the standpoint of the Archdiocese.

134. A judicial determination is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and duties as aforementioned. Said controversy is incapable of resolution without a judicial determination.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Appalachian respectfully requests that the Court enter judgment:

    a. declaring that Appalachian has no obligation under the Excess Policies to defend and/or indemnify the Archdiocese and/or the Affiliates for the Appalachian Pritchard Claims;

    b. declaring that Appalachian has no duty to defend or indemnify the Archdiocese for any Appalachian Claims that were released by Release No. 1 or Release No. 2;

    c. declaring that Appalachian has no duty under the Excess Policies to defend or indemnify the Archdiocese because the Underlying Claims were not caused by an "occurrence" that resulted in personal injury during the policy period that was neither "expected nor intended" from the standpoint of the Archdiocese;

28

Case No.

APPALACHIAN INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT AND EQUITABLE REIMBURSEMENT AND DEMAND FOR TRIAL

Case: 26-03029 Doc#1 Filed: 06/26/26 Entered: 06/26/26 13:46:09 Page 28 of 31

d. declaring that Appalachian only has an obligation to afford coverage to the Archdiocese and the Affiliates, if at all, under the Excess Policies for that portion of any Appalachian Claims that alleges personal injury during the stated policy period and that it has no obligation to afford coverage for any personal injury that occurred outside of the Excess Policies' stated policy period;

e. declaring that unless and until the primary limit is exhausted in accordance with the policy's terms, and/or it is determined that the Underlying Policy does not cover the Appalachian Claims and the Excess Policies do, coverage under the Excess Policies does not attach for any of the Underlying Claims;

f. declaring whether RCASF has breached any term or condition of the Excess Policies and therefore Appalachian has no obligation to defend or indemnify the RCASF;

g. declaring that Appalachian is entitled to reimbursement for all amounts paid in connection with the settlement of the Doe Actions;

h. ordering the Archdiocese to reimburse Appalachian all amounts paid by Appalachian in connection with the settlement of the Doe Actions;

i. declaring that Appalachian has no duty under the Excess Policies or applicable law to defend or indemnify the Archdiocese for the John SF-1 Doe Action based on the preclusive effect of the 2005 jury verdict in *Kavanaugh v. Roman Catholic Archbishop of San Francisco* and Release No. 1;

j. declaring that Appalachian has no duty under the Excess Policies or applicable law to defend or indemnify the Archdiocese for the John Doe SF 1013 Action based on the preclusive effect of the 2005 jury verdict in *Kavanaugh v. Roman Catholic Archbishop of San Francisco;*

k. awarding prejudgment interest; and

l. granting any other relief that the Court deems just and proper.

Dated: June 26, 2026

**ROBINS KAPLAN LLP**

By: /s/ Christina M. Lincoln
Christina M. Lincoln (SBN 274352)
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 552-0130
Facsimile: (310) 229-5800
Email: clincoln@robinskaplan.com

-and-

Melissa M. D'Alelio
Taylore E. Karpa Schollard
800 Boylston Street, Suite 2500
Boston, Massachusetts 02199
Telephone: (617) 267-2300
Facsimile: (617) 267-8288
Email: mdalelio@robinskaplan.com
tkarpa@robinskaplan.com

-and-

Todd C. Jacobs (pro hac vice)
John E. Bucheit (pro hac vice)
2 N. Riverside Plaza, Suite 1850
Chicago, Illinois 60606

Harris B. Winsberg (pro hac vice)
Matthew M. Weiss (pro hac vice)
Matthew G. Roberts (pro hac vice)
303 Peachtree St NE, Suite 3600
Atlanta, Georgia 30308

Attorneys for Appalachian Insurance Company

Case: 26-03029    Doc#1    Filed: 06/26/26    Entered: 06/26/26 13:46:09    Page 30 of 31

## <u>JURY DEMAND</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Appalachian hereby demands a jury trial on all the issues so triable.

APPALACHIAN INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT AND EQUITABLE REIMBURSEMENT AND DEMAND FOR JURY TRIAL

Case: 26-03029    Doc#1    Filed: 06/26/26    Entered: 06/26/26 13:46:09    Page 31 of 31